IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:13-CR-382-1 |
| | ) | |
| THERON TREVAR ROGERS, | ) | |
| | ) | |
| Defendant. | ) | |

# **MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

The Government seeks an order requiring the defendant, Theron Rogers, to submit to the administration of antipsychotic drugs against his wishes in an effort to render him competent to stand trial. Mr. Rogers objects. Because the Government has not met its burden of proof to establish that involuntary medication is appropriate, the Court will deny the motion.

On October 1, 2013, Mr. Rogers was indicted for threatening to blow up a Social Security Administration building in Greensboro, North Carolina, in violation of 18 U.S.C. § 844(e). (Doc. 1.)[1] Upon defense counsel's motion, (Doc. 9), the Court ordered a psychiatric evaluation of Mr. Rogers. (*See* Docs. 10, 11.)

On February 3, 2014, the Federal Correctional Institution at Butner filed the results of the psychiatric evaluation, (Doc. 13), in which a forensic psychologist

---

[1] Docket references are to the docket number and page number appended by the CM-ECF system.

concluded that "due to [Mr. Rogers'] deteriorated mental status, there are serious concerns about his rational understanding of his legal situation, his ability to assist counsel, and his ability to comport himself appropriately in court." (Doc. 13 at 5.) The psychologist noted that Mr. Rogers, who was then fifty-three years old, had refused to participate or cooperate in the evaluation, (Doc. 13 at 1, 3), that no testing was done, (Doc. 13 at 3), and that there was "no available information regarding [his] history of mental illness and associated treatment (if any)." (Doc. 13 at 4.) The psychologist diagnosed Mr. Rogers with an "[u]nspecified [s]chizophrenia" disorder, (Doc. 13 at 3), and opined that Mr. Rogers was not competent to stand trial. (Doc. 13 at 5.)

Soon after a status conference on March 4, 2014, at which no one contended that Mr. Rogers was competent, the Court adopted the findings in the evaluation, (Doc. 14 at 1), noted that Mr. Rogers' conduct at the conference corroborated the findings in the evaluation, (Doc. 14 at 1-2), and found that Mr. Rogers was presently suffering from a mental defect that rendered him mentally incompetent because he was "unable to understand the nature and consequences of the proceedings against him and to assist properly in his defense." (Doc. 14 at 2.) Pursuant to 18 U.S.C. § 4241(d), the Court ordered that Mr. Rogers be committed to the custody of the Attorney General for hospitalization and treatment to determine whether there was a substantial probability that in the foreseeable future he would attain the capacity to permit the proceedings to go forward. (Doc. 14 at 2.)

On October 29, 2014, the Mental Health Department at Butner filed a forensic evaluation containing the results of detailed observations of Mr. Rogers over several months. (Doc. 15.) During that time, Mr. Rogers refused to cooperate with evaluators, refused to accept offered treatment, and "remained hostile, paranoid, and withdrawn in his cell on 23-hour per day lockdown status." (Doc. 15 at 4-5.) The evaluating psychologist and psychiatrist diagnosed Mr. Rogers with schizophrenia, noting his "gross disorganization and psychosis." (Doc. 15 at 2, 5.) Evaluators found that Mr. Rogers "suffers from a chronic mental illness characterized by severe thought disorder, probable hallucinations, delusions, and disorganized behavior." (Doc. 15 at 5.) They concluded that Mr. Rogers was not competent to stand trial, (Doc. 15 at 6-7), and "offer[ed] the opinion [that] there is a substantial probability that Mr. Rogers' competency status can be restored with a period of treatment with antipsychotic medication." (Doc. 15 at 29.)

The Court held a status conference on December 2, 2014. Mr. Rogers was present and represented by court-appointed counsel, Alan Doorasamy. The Government was represented by Special Assistant United States Attorney, Andrew Cochran.

At the conference, the Government orally asked the Court to enter an order requiring Mr. Rogers to receive antipsychotic medication to render him competent to stand trial. (Doc. 16 at 1.) The only evidence offered by the Government was the various forensic evaluations. (Doc. 16 at 1.) Defense counsel offered no evidence, but did question whether the Government had established that it had important governmental interests at stake and whether involuntary medication would substantially further those

interests.  (Doc. 16 at 1.)  Mr. Rogers addressed the Court, and, while he was only somewhat coherent and was generally illogical and non-responsive, he unambiguously, clearly, and firmly stated his objection to taking any medicine.  (*See* Doc. 16 at 1.)

The Court entered an Order directing the parties to investigate whether there were past medical records available that might assist the Court in making its decision, to file any appropriate motions, and, if the party filed none, to file an explanation.  (Doc. 16 at 3.)  Thereafter, defense counsel sought funds for an investigator to assist in locating Mr. Rogers' mental health records.  (Doc. 17 at 1.)  The Government did not file any motions and did not file any explanation for its decision not to seek court assistance in locating evidence about Mr. Rogers' mental health history, despite the Court's order to do so.  (Doc. 16 at 3.)

The Court has reviewed the matter in light of *Sell v. United States*, 539 U.S. 166 (2003), *United States v. White*, 620 F.3d 401 (4th Cir. 2010), *United States v. Bush*, 585 F.3d 806 (4th Cir. 2009), and *United States v. Evans*, 404 F.3d 227 (4th Cir. 2005). "[A]n individual has a constitutionally protected liberty interest in avoiding involuntary administration of antipsychotic drugs," which may only be overcome by "an 'essential' or 'overriding' state interest." *Sell*, 539 U.S. at 178-79 (internal quotation marks omitted).  When the Government seeks to forcibly medicate a defendant to render him competent to stand trial, the Due Process Clause requires that the Government establish by clear and convincing evidence that (1) important governmental interests are at stake and are not outweighed by special circumstances that diminish those interests; (2)

involuntary medication will significantly further those interests, without causing side effects that will interfere significantly with the defendant's ability to assist counsel; (3) involuntary medication is necessary to further those interests, taking into account less intrusive alternatives; and (4) the administration of the drugs is medically appropriate. *Sell*, 539 U.S. at 179-81; *Bush*, 585 F.3d at 813-14.

It is undisputed that Mr. Rogers is not competent to stand trial and that medication is likely the only way to restore his competence.[2] The Court must determine whether the Government's admittedly significant interest in bringing Mr. Rogers to trial outweighs the countervailing considerations and whether the prescription drug regimen suggested by the medical professionals at Butner is medically appropriate. *See Sell*, 539 U.S. at 180-81; *Bush*, 585 F.3d at 813-14.

The only governmental interest the Government has identified is its interest in bringing a person accused of a serious crime to trial. While this interest is "significant," *Bush*, 585 F.3d at 813 (citing *Sell*, 539 U.S. at 180), it is not enough by itself to allow the Government to force an unwilling person to submit to involuntary medication. *See Sell*, 539 U.S. at 180; *White*, 620 F.3d at 411; *Bush*, 585 F.3d at 814-15.

---

[2] On the second and third *Sell* factors, the evaluators found, after detailed discussion, that "involuntary treatment . . . will be substantially likely to render [Mr. Rogers] competent to stand trial and substantially unlikely to have side effects that will interfere significantly with his ability to assist counsel," (Doc. 15 at 19), and that "involuntary medication is necessary because alternative, less intrusive treatments, are unlikely to achieve substantially the same results of restoring him to competency." (Doc. 15 at 21.) No one has contended to the contrary.

Here, there are significant countervailing considerations. First, while the crime at issue did involve threats of violence, the Government has not offered any evidence that the persons who received the threats considered them to be real threats likely to be carried out as opposed to the ranting of a mentally ill person, nor has the Government offered any evidence that Mr. Rogers intended to carry out his threats or had the mental capacity to attempt to carry out his threats. *See White*, 620 F.3d at 419-20 (noting that the lack of evidence that the defendant is likely to commit future violent crimes reduced the Government's interest in prosecution). Nor does Mr. Rogers have a history of violent conduct, according to the available summary of his criminal history.[3] (*See* Doc. 8 at 2-6); *cf. United States v. Sanderson*, 521 F. App'x 232, 236 (4th Cir. 2013) (noting the defendant's "history of violent offenses" as contributing to the conclusion that special circumstances did not outweigh the Government's interest in prosecution), *cert. denied*, 134 S. Ct. 661 (2013) (mem.).

Second, conviction is doubtful. Mr. Rogers has an obvious insanity defense, which, based on the evaluations to date, has a good possibility of success. *See United States v. Morrison*, 415 F.3d 1180, 1187 (10th Cir. 2005). Even if that defense is not successful, the Government may have difficulty proving beyond a reasonable doubt the

---

[3] Mr. Rogers does have one conviction for misdemeanor assault with a deadly weapon. (Doc. 8 at 6.) While certainly serious, one violent misdemeanor, the circumstances of which are unknown, does not constitute a "history" of violent conduct. This is especially so when it is clear Mr. Rogers has had dozens of contacts with law enforcement over the years which did not involve any violence.

6

degree of knowledge or malice required by the statute, *see* 18 U.S.C. § 844(e), given Mr. Rogers' mental illness.

Finally, even if Mr. Rogers were convicted, any active sentence would likely not be longer than the time he has been in custody. *See Sell*, 539 U.S. at 186 (noting that a defendant receiving credit toward a sentence for time served reduces the Government's interest in prosecution). While the Court understands that the maximum punishment for the offense at issue is ten years, *see* 18 U.S.C. § 844(e), the base offense level is only 12 under the sentencing guidelines. *See* U.S.S.G. § 2A6.1(a). The Government has not provided any details about the nature and circumstances of the offense conduct beyond what is in the indictment and the evaluations, nor has it identified any facts that would increase that offense level. While Mr. Rogers has a significant criminal history, all his convictions are for misdemeanors, and most are quite minor and obviously related to substance abuse. (*See* Doc. 8 at 2-6.) Assuming a criminal history category of three[4] and no reduction for acceptance of responsibility, the guideline range would be 15 to 21 months. Mr. Rogers has already been in federal custody for roughly fifteen months. (*See* Doc. 4 (indicating that the arrest warrant was executed on October 5, 2013).) The Butner evaluators' report suggests that its recommended treatment regimen would take at least four months. (*See* Doc. 15 at 30.) If competency is restored, it would take additional

---

[4] The Court has not tried to calculate Mr. Rogers' criminal history level, as that is a complicated process. Rather, the Court has eyeballed Mr. Rogers' criminal record and made a rough estimate. The burden is on the Government to identify its interests, and it has been silent on the issues of Mr. Rogers' criminal history level and his likely punishment. *See Hughes v. B/E Aerospace, Inc.*, No. 1:12CV717, 2014 WL 906220, at *1 n.1 (M.D.N.C. Mar. 7, 2014) ("A party should not expect a court to do the work that it elected not to do.")

time to prepare for trial or change of plea, given the need to locate evidence connected to an insanity defense.

In addition to these substantial countervailing considerations, the Court has concerns about ordering involuntary medication without more information on Mr. Rogers' mental health history under the unusual circumstances of this case. The evaluators and treating psychiatrist know nothing about Mr. Rogers' mental or physical health beyond what they have discovered over the past year.[5] No family member has come forward to provide information, the State of North Carolina has provided no medical records[6] and no other sources have been approached, and Mr. Rogers himself is an unreliable historian. Given Mr. Rogers' age and criminal history, as well as the reported history of military service, (Doc. 8 at 2), and social security disability payments, (Doc. 15 at 3), it seems likely that such records exist and likely that Mr. Rogers has been treated with prescription medicines in the past for psychosis and schizophrenia.

The Government's evidence establishes without dispute that there are a number of available medications that are regularly prescribed to treat persons with Mr. Rogers'

---

[5] The evaluators stated that "[n]o past medical records describing Mr. Rogers' response to psychiatric treatment [are] available." (Doc. 15 at 18; *see also* Doc. 13 at 2, 4; Doc. 15 at 4.)

[6] The Butner evaluators noted that "[m]edical records were requested from the State of North Carolina." (Doc. 15 at 4.) The evaluators then stated that "[t]o date, there is no indication that Mr. Rogers has been hospitalized due to psychiatric illness in the past. There is also no documented history of medication treatment of psychosis." (*Id.*) It is not clear whether the evaluators received information from the State to support this statement, whether they were told that there were no records on Mr. Rogers, or whether the State simply did not respond to the request.

same mental illness. (Doc. 15 at 21-22.) That same evidence also establishes that all of these drugs carry the possibility of significant side effects, (Doc. 15 at 14-18), and that selecting an appropriate prescription drug regimen is ordinarily influenced by which drugs have helped a person in the past and whether a person has experienced any side effects in the past.[7] (*See* Doc. 15 at 12.) Thus, while it is undisputed that the administration of prescription drugs is medically appropriate generally for someone with Mr. Rogers' condition, (*see* Doc. 15 at 23), the absence of evidence about Mr. Rogers' prior mental health treatment makes selecting an appropriate treatment for him more uncertain than in cases where treating physicians have the benefit of a defendant's history of prescription drug treatment or other reliable information about the defendant's physical and mental health history. The Butner psychologist and psychiatrist had no information of this kind, (*see* Doc. 15 at 4, 18), and were limited to their own observations of Mr. Rogers and those of other Butner personnel. (*See* Doc. 15 at 2.) They did not even have the benefit of reports from a family member. (Doc. 15 at 3, 18.)

A treatment plan to administer involuntary medication must be tailored to an individual defendant's particular mental and physical condition. *See Evans*, 404 F.3d at 240. Given the lack of medical history, that is difficult to do here, and the Government has made no efforts to make the task any easier. The Government did not call any psychologist or psychiatrist to testify so these issues could be explored, has made no

---

[7] "[T]he selection of an antipsychotic medication is frequently guided by the patient's previous experience with antipsychotics, including the degree of symptom response, the side effect profile, and the patient's preference for a particular medication." (Doc. 15 at 12.)

effort to locate records likely to contain such information despite the Court's explicit invitation, and has offered no explanation for its failure to do so in the face of the Court's direct Order. (*See* Doc. 16 at 3.) While defense counsel has admirably filed a motion to hire an expert to locate such records, the burden of proof is not on the defendant.[8] *See Sell*, 539 U.S. at 180-81; *Bush*, 585 F.3d at 814.

The Supreme Court has suggested that the instances in which the Government may force unwanted prescription drugs on a person to restore that person's competency to stand trial "may be rare." *Sell*, 539 U.S. at 180. The Fourth Circuit has also cautioned against making this a "routine" practice. *See White*, 620 F.3d at 422. The Government seems to have taken the opposite approach and assumed that all it takes to involuntarily medicate a defendant is to show that the defendant is charged with a serious crime and that the defendant has a mental illness that drugs are likely to ameliorate. That is not enough.

Here, there are substantial countervailing considerations that outweigh the Government's interest in prosecuting Mr. Rogers. The Court concludes that the Government has not met its burden of proof to show that its interests in bringing Mr.

---

[8] The Court does not mean to hold or even imply that involuntary medication is always inappropriate when a psychotic defendant has not received mental health treatment in the past. The problem is not that the defendant hasn't received treatment in the past. Rather, the problem is with the medical appropriateness of requiring Mr. Rogers to take prescription medicine when his health care providers are ignorant about whether Mr. Rogers—a middle-aged person with a long history of minor criminal offenses consistent with mental illness and substance abuse, who apparently receives some sort of disability payments—has received prescription drug treatment in the past and, if so, whether he has experienced adverse side effects or benefitted from such treatment, and when no effort has been made by the Government to locate such information.

Rogers to trial outweigh Mr. Rogers' liberty and due process interests in avoiding unwanted prescription medication and that the Government has not established that the proposed treatment is medically appropriate.

It is **ORDERED** that the Government's oral motion to involuntarily medicate the defendant is **DENIED**. The defendant's motion for funds to hire an investigator is **DENIED** as moot, without prejudice as to renewal should these proceedings continue. The matter shall be set for status conference as soon as feasible.

This the 5th day of January, 2015.

_____
UNITED STATES DISTRICT JUDGE